America v. Marcellus Hoffman, case number 23-2098. Please approach, introduce yourself, and let us know how much time you'd like for rebuttal. Good morning, Your Honor. Samantha Stern on behalf of Marcellus Hoffman. I'd like to reserve three minutes for rebuttal. Sure, granted. Thank you. After a two-year break in the district court proceedings, Marcellus Hoffman was permitted to proceed pro se to his 2023 resentencing without any renewed inquiry regarding whether he wished to have counsel, let alone the comprehensive inquiry required under Peppers and Salamo. This appeal presents two independent paths to reversal for the resulting Sixth Amendment violation. First, that the 2021 colloquy was deficient for a valid waiver of the right to counsel at sentencing. And second, that in any event, the district court's failure to make any inquiry in 2023 means there was no valid waiver at that time. I'd like to turn first to the colloquy and why it was deficient. The only operative for a colloquy in this case occurred in 2021 after Mr. Hoffman ascertained that his lawyer was laboring under a conflict of interest and request to proceed pro se. The need to conduct a for a colloquy took the district court somewhat by surprise, but the court nonetheless attempted a sort of on-the-fly, mostly Peppers-based inquiry to ascertain whether this was a knowing and intelligent waiver. On the whole, the colloquy failed to meet the requirements, most notably under this court's decision in Salamo. In Salamo, this court held that when a request to proceed pro se occurs in the context of sentencing, the district court has to probe into the defendant's understanding of the complexities of sentencing. Notably, this improvised colloquy really failed to do so, in part because the court was using the list of questions from the bench book, which is really aimed at the trial and then and the sort of right to counsel in the context of trial proceedings. Here, this court can put meat on the bones of its Salamo decision and make clear that in the context of a request to proceed pro se at sentencing, the district judge needs to talk about the sentencing process, at a minimum reference the Sentencing Reform Act and the fact that there's essentially no limitation on the information a judge can consider in sentencing a criminal defendant. Second, that the court addressed the sentencing guidelines. Here, there was no reference at all to the sentencing guidelines, the role they play in sentencing. In judging the 1991 disclosure, do we judge it by what other cases have said or we judge it by the fact that Mr. Hoffman at that time seemed happy with what was told him and has not complained about that at that time? This court has to apply its long-standing precedent, recognizing that the district court has the duty to ensure protection of the defendant's Sixth Amendment rights at every stage of the proceedings. That's from the seminal decision in Von Moltke from the Supreme Court and this court has really taken that instruction seriously in its case law from Welty to Peppers to a number of cases that have followed, recognizing that the on-the-record colloquy conducted by the district court must be comprehensive, it must be penetrating and sort of no subjective sort of assessment. But the errors that you're pointing to now regarding the guidelines and the complexities of sentencing aren't really what you raised in your brief. What you raised in your brief are the erroneous range of penalties that were given for counts three as well as the supervised release on counts one and two. And I'm just interested in setting aside counts one and two. The record seems to reflect, looking at the entire record going back even to Mr. Hoffman's 2006 sentencing memo, that he had, in most cases we're saying there's a high probability someone actually knew, but the record here seems to show he had actual knowledge of what 924C's penalties were. And the government asks us to take into account the whole record, which we seem to have repeatedly rejected that approach. So is there any way, even if there were actual knowledge, just let's just assume that he knew and that there's no counts one and two issue. Does our case law foreclose us from even considering, is this, I don't want to raise the specter of the categorical approach, but is this sort of categorical approach-esque where, hey, you plainly failed to meet what we've set forth and his actual knowledge doesn't matter? This court has said very clearly as early as Jones that it is not taking the approach of other circuits that allow a review of the entire record to try to ascertain what a defendant knew at the time of the waiver. And so I think this court has to follow that instruction here. And I think sort of, you know, it's consistent as well with Welty, where we're really looking at what the defendant knew at the time of the waiver. And so relying on things that a defendant filed years earlier or years subsequent to the waiver. But he says on that date that he disagrees with the court's advisement of the sentencing for 924C. Sure, absolutely. This court can, there's no question to consider, of course, the heart of the analysis is everything that occurs at the actual colloquy. And so that is a fair consideration. My argument does not rest solely on the sort of discussion about the penalties that occurred in the course of the colloquy. I think my larger point really is about how this colloquy, and this was really, this is raised in the opening brief, as far as my sort of reliance on SELAMO, this colloquy misses the mark as far as what this court required in SELAMO. A colloquy must address the nature of the proceedings at issue. And here we're dealing with a complex resentencing proceeding. And this colloquy really doesn't fit with those proceedings because it doesn't really talk at all about sentencing or what's to happen or the dangers and disadvantages of proceeding to a resentencing without a lawyer. And that's the critical missing piece here. So a couple of questions. If that's a critical missing piece and it's structural error, then a lot of, didn't that take place in 2021? But we've already got an intervening appeal in the meantime. So if that's such a huge mistake, like, are we supposed, what are we supposed to do? Are we supposed to say, aha, that's a huge mistake. Now let's just unring the bell all the way back. Because it's, you know, if you go back to some of these ancient cases, they say, maybe it's, you know, they say you don't even have jurisdiction to, you know, when the Sixth Amendment, when you don't advise someone about the Sixth Amendment, the court loses all jurisdiction from that point on. And so, you know, what do we do if that's true? It seems that there's a problem in 2021 and everything else is null and void after that. Almost proves too much. No? Well, we have a judgment that we're appealing from right now. And insofar as this court is going to rely on the deficient 2121 colloquy to support a finding of a knowing and intelligent waiver in 2023, this issue is once again ripe and there's absolutely no question this court has to address it. Right? So this error may have been properly raised in a prior appeal as well. But nothing, certainly this court has to again. But if it's jurisdictional, I don't know that you're going that far, but all the Supreme Court cases say that it is. They've been overruled on other grounds. I don't need to go that far here. Certainly, you know, insofar as, I don't think there's any way, and I don't think the government is taking this position, that Mr. Hoffman could be considered to have validly waived his right to counsel at the 2023 resentencing, absent that 2021 colloquy. So let me follow up on one thing about that. You know, the touchstone is, you know, it's almost like we've got these two things in play. The underlying constitutional standard is knowing, intelligent, voluntary waiver. And then we've got this kind of apparatus on top of it, which is the Pepper's, the Feretta sort of colloquy. And maybe our case law overvalues the form over the underlying substance. I think that, you know, that's our case law. That's where it is. But I don't know that we can completely turn a blind eye to whether something's knowing, voluntary, and intelligent. And so if the mistake on count three was the court said 10-year maximum, and it's really five-year maximum, do you think that that do you think that your client under that circumstance would say, you know what, it was knowing, voluntary, and intelligent when I thought I was looking at 10 years under count three, but it's not knowing, voluntary, intelligent when it's only five years. It would seem to me that maybe your case is strong if the court told him five years, and it turns out to be 10 years, you could say, oh, we didn't know about his additional exposure. But in this instance, the mistake is one of less exposure. And so if you're willing to represent yourself at 10 years, wouldn't you also be willing to represent yourself at five years? And can't we make that just kind of common sense, reasonable inference that yes, that defect didn't affect the knowing, intelligent, and voluntariness of his decision? In Booker, this court recognized it wouldn't engage in after-the-fact subjective assessments about what may or may not have sort of factored in a defendant's decision to go it alone or proceed with counsel. And I submit that really, we don't want to oversimplify sort of what might go into a defendant's decision, whether to proceed with counsel or not. For example, you can envision a scenario where increased opportunities for leniency at sentencing might push a defendant toward proceeding with counsel because they know counsel can present mitigation, for example, in a way that they may not be able to do on their own. So I think we have to appreciate that there are a lot of nuanced and indeed sometimes idiosyncratic reasons why a defendant might wish to have counsel rather than to proceed pro se. We can't simplify it and just say, you know, the more severe the penalties you face, the sort of less likely you are to want to go it alone. I think that the way defendants actually make decisions in these contexts are much more nuanced. So I'd be curious your thoughts. You said you got this two-pronged approach and we've focused a lot on the first prong. But the second prong seems to be that no, there needed to be, even if 2021 is well and good, there needs to be a re-upping of this phoreticology. And I guess as I read your briefs, you say that there's, I think there's, you know, several mistakes along the way you didn't notify of Rehave, of Nasir, one other thing, the change in sentence maybe, you didn't do those things and that that had to happen. Yes. But I'm not seeing, I'm just not seeing a notion for, you know, an updated list of case law and their effects in Peppers, in Salimo. I'm not seeing that. And so I guess you're relying on the general thing of the nature of the proceedings that they were facing. But I don't know that a primer on the latest greatest status of third circuit case law is required, is it? The most critical distinction in this case is the lengthy passage of time and the break in the district court proceedings. Here we have a two-year delay from the last time Mr. Hoffman had been before the district court. And there was not a single question about whether he wished to have counsel present with him. That is very unusual. I don't think this court has been presented with anything similar to that set of circumstances, and certainly not in a published decision relating to phoreticology. So the delay alone makes this case very unique. Did we consider that in citing a case like that, that in essence, we really don't want people representing themselves in the first place? Yes, Your Honor, we really don't. And we really want we really want district courts to have every motivation to check in and have some supplemental colloquy, even if it's not the full colloquy that they do in the first instance. At the very least, checking in, acknowledging that they are pro se, asking if they wish to have counsel, or at the very least, appoint standby. Notably, in this case, standby was appointed at the 2021 resentencings, and no standby was appointed at the 2023 resentencings. Best practice isn't necessarily what the Constitution demands, is it? I can acknowledge that, certainly. But, you know, von Moltke requires that district courts recognize their duty to protect the defendant's Sixth Amendment rights at every stage of the criminal proceedings. And I'm sorry, and you focus, I just, I'm mindful of the red light, you focus mostly on the timing. Could you address Judge Fripp's point about the case law, and especially noting that Rehife was already, I always, I don't know how to say, was already law in 2021? Yes, I think given not only the passage of time, but the fact that when Mr. Hoffman returned in 2023 for resentencing, the legal landscape had somewhat shifted due to additional changes. First, this court's decision in the intervening appeal, recognizing the reduced statutory penalties that ought to apply to count three. Second, the impact of the Rehife decision meant that the district court was poised not to impose any further penalty for count six. But Rehife was already law in 2021. So how is that a change to 2020? I just want to have to be case specific, or I'm just trying to get, what is the line or the guiding principle you're drawing? So let's just acknowledge the law changed, whether it was Rehife or not. But what's the limiting principle of that? The limiting principle is that it's, these are changes that impact the range of allowable punishments, and that's language from Von Mulkey's requirement, impact the range of allowable punishments that are going to be changed. So the changes may have happened earlier, but the court was not poised until 2023 to give effect. And so the advisements that had been given in the 2021 colloquy were no longer accurate and up to date, given what he was faced with in 2023. To the extent the district court does get specific. But the actual range hadn't changed. The statutory penalty range did change. The court was applying a lower range in 2023 than it applied at the 2021 resentencing. And so that advisement was now materially incorrect. Do you have any case that says, when you mess up on a FRERTA colloquy by saying more time instead of less time, that that's the structural error? I mean, this would be the first, right? This would be the first time that he said, we told you more. You wanted to go to loan with more. It's actually less. Structural error. Throw everything out. It feels like a quick trigger for structural error, right? The structural error is in the denial of the right to counsel. And so this court is focused on whether or not we have a knowing and intelligent waiver. And so certain changes, you know, whether they subject someone to increased punishment or reduced punishment, they do go to the knowing and intelligent nature of the waiver. You know, in other contexts, like in the Brady context, we focus on materiality. Would it have made a difference if you would have got the info? Would it have made an ounce of difference? And so, you know, structural error is like not, but materiality is also kind of a Do you really think it would have made a difference? I mean, is there any realistic shock that anyone's going to think that he would have said no? Now that I mention it, the reason that I wanted my own counsel was that there was a conflict with community defender services. And that's why I want my own counsel. I don't want my own counsel because they aren't arguing the right amount of sentencing. It's a conflict. And so we go through this process of hey, we got to tell you everything. But he already stated that he had one reason for wanting new counsel and nothing that was said in none of the mistakes that were made said, no, that's actually not a conflict. They actually didn't represent a codefendant. You have the record wrong. No, that was his reason. And so he states that his only reason is to avoid a conflict of interest with his counsel. And then there were mistakes made. Is that really material? If he presents an illogical argument to the court, isn't that not all the more reason for the court to say he should have counsel? You want to take those in order? You have an unfriendly question, a friendly question. So take the unfriendly first and then you can, we'll honor the red light after you get done the friendly question. I think this court has rightly in Booker and in other cases, declined to engage in the after the fact, you know, attempt to divine what may or may not have factored into the defendant's decision of whether or not to proceed pro se. And to giraffe points exactly, these are often very idiosyncratic decisions. A defendant wants to preserve an issue that his counsel refuses to raise. And you really, it really would be, it's much more consistent with this court's precedent to look only to this colloquy and determine whether or not the changes in the interim, including a very lengthy passage of time and break in these proceedings, meant that the district court in order to meet the requirements of the Sixth Amendment needed to make some limited inquiry into whether Mr. Hoffman still wished to and his experience representing himself again, pro se on appeal could have led him to conclude for a number of reasons that he didn't wish to go it alone yet again at the 2023 resentencing. I'll reserve my time. Good morning, may I please the court. I'm David Troyer, an assistant United States attorney represent the government as appellee in this matter. Mr. Hoffman is coming before this court asking for a fifth sentencing hearing in the form of a fourth resentencing. And in doing so, he's basing it on a claim that he makes for the very first time on appeal that he was denied counsel, despite consistently representing himself since 2021 and filing pro se pleadings for at least the last 17 years. Mr. Hoffman's self representation has actually been effective. His sentence was consistently reduced from life plus 35 years to 780 months, to 450 months, to finally 380 months, which is the current sentence, which was a 100 month reduction from the bottom of the guidelines in this case. So he has probably been the most pernicious but most effective pro se litigant I've seen in now almost 43 years of practicing as a prosecutor. He nowhere, however, in his brief, in counsel's brief, does Hoffman claim that he wanted counsel in this case or wanted standby counsel in this case. And I think that's prescient and that is not stated because it's frankly cannot be stated because it's not true. And the record in this case is replete with Mr. Hoffman wanting to represent himself. He has been steadfast in his to represent himself. And that was clear both in the colloquy. This sounds like a whole record approach. We do advocate for a whole record approach and we do so based on sound law. In fact, we do so based on Supreme Court law. And that is the Supreme Court in U.S. versus Vaughan, which admittedly had dealt with the Rule 11 guilty plea colloquy, but still a structural right. But even if that's the case, would we have to go en banc? Or is there some limited carve out that you're asking for that wouldn't require en banc? I mean, simply the fact that our precedent might be wrong doesn't mean that this panel can overturn that. That's a great question, Judge Chung, but I don't think that's actually, that this court would have to go en banc to make that determination. Because when we look at the two cases that say, that this court has said in Booker and in Jones, that it suggests at least, that it should be only the colloquy that we look to, those are quite distinguishable from this. And they're not really the holding in this case. The holding in that, in those cases, the holding in that case, those cases were cases where the plea colloquies were, or rather the in Booker, the 2012 Booker case that this court dealt with, the court threw up its hands and said, we can't tell from this. We're not going to try to look at the entire record and divine what was in the mind of this defendant. We can't do that. We're not going to do that. So we're just going to- It doesn't say we're not doing that here. It's saying we've already decided that we do not take that approach, although other circuits do. It didn't, but it didn't hold that. But in Vaughan, the Supreme Court said, we hold that a silent defendant has the burden to satisfy the plain error rule, and that a reviewing court may consult the whole record when considering the effect of any error on substantial rights. That's the Supreme Court talking, and that's about, and that's a holding. It's not just dicta. And it was, and that was the entire court. Even the concurring opinion went along with that portion of the opinion. So you'd have us extend that to Ferretta? Certainly, because they're both substantial rights. They're both rights under the Fifth and Sixth Amendments. The right to trial, the go to trial, as opposed to pleading guilty, is every bit as important as the right to either self-representation on the one hand, or representation by counsel on the other. I kind of thought you were going to go a different direction with maybe Booker and James, which was looking at the procedural posture of the cases and saying, hey, look, those cases, whatever they say about whole record, didn't occur in the same posture as this case. This case looks only towards sentencing. It's not the whole arc of a criminal proceeding against somebody. And so I thought you might try to say, hey, that whole record approach applies at discrete stages of litigation. But as we know, once you get to sentencing, the gates open up in terms of what can be considered in terms of the court. Maybe the gates should also open up in terms of what should be considered in terms of colloquy, because we've had a lot of water under the bridge by this point in time. And it seems a little strange to sit there and say, no, that water didn't go under the bridge. Yes. Well, in this case, there was a lot of water under the bridge. Your Honor, correct. This is not a posture where the defendant is being given a colloquy at the early stages, as was the case in the case cited by Counsel Clark. This is where it was given in the early stages before discovery was even given and before trial, and where they needed a renewed colloquy. This is a case where this person's already had a trial. They've had an appeal. They've had a resentencing. They've had another appeal. They've had a second resentencing and another appeal. And now we're at a third resentencing. Along these lines, we've said in a habeas context that a whole record approach is appropriate. It seems like you're sort of saying when you're onto your fourth resentencing, that's more akin to that end of the spectrum than your first sentencing. Well, certainly because there's more, and there's also more record. The district court was in the best position to judge whether Mr. Hoffman was knowingly and intelligently waiving his rights. The district court was very familiar with it, Mr. Hoffman. Mr. Hoffman had filed many pleadings, had appeared before the district court. District court could view Mr. Hoffman's demeanor. The district court asked the questions, and the colloquy itself, by the way, is this was not by the seat of his pants. He assiduously followed the 17 questions in FREDA, with one exception. And the only exception was the one that didn't apply in this case, which was whether the defendant recognized that a defense attorney could come up with defenses at trial. And of course, this was a resentencing, so that wasn't necessary. That's the only one that wasn't addressed. But did there need to be a substitute question to your colleague's point that that's trial specific, but does there need to be a sentencing specific, such as do you understand the guidelines? Do you understand that you will not be able to make the guidelines arguments that an attorney would? Well, in this case, he's already made guidelines arguments, and he's made them rather proficiently. But you're going back to the whole record approach, and we're just going, I'm asking more of a facial question of what's adequate. Well, on the record, if we look only at the colloquy, first of all, the guidelines, the guidelines, the actual range of the guidelines was given on the record during this colloquy. So he was familiar with what he was looking at, which was 480 months to life. But he also admitted at page, I think it was 216 of the appendix, he confirmed that he had in fact had received the PSR in this case, which of course he had, and he had had it for a long time, and he had written proficiently on it already before the district court and this court. But he's, so he was well familiar with the guidelines. It was no, it was no real need for Judge Slomski to ask Marcellus Hoffman if he was familiar with the guidelines, he knew the guidelines because he did. An actual record with the, I'm just asking for a colloquy, purposes of, removed from the actual facts of this case, for a sentencing context, doesn't a sufficient colloquy have to include a substitute question for that defenses at trial question, such as, you know, do you recognize that at sentencing a defense attorney is better positioned to make sentencing guidelines arguments? My short answer is there's no case that that requires that. There's no case law that says that that has to be asked under that situation. You know, the case law I'm reading really doesn't really talk about the role of the guidelines at all. It seems to be talking mostly about statutory max and statutory minimum. Yes, that's correct. And your friend on the other side comes, you know, perhaps in appreciation of that, your friend on the other side comes with, I thought, decently modest requests with respect to what she thinks should be included. She doesn't say you need to receive the PSR, you need to talk about the relevant guideline ranges, your ability to seek variances. You don't need a whole tutorial on that. She just says, we want to tell you about the Sentencing Reform Act, and we want to tell you, I think we cut her off before she got to her second point, but she had a second point along those lines. To Judge Chung's point, why not just add that? Why not just sit there and say if it's a sentencing case, you don't have to do the whole PSR. You don't have to do anything else. You just have to tell people there's a few consequences for sentencing. They're a little counterintuitive that not everybody knows. You do these two things. You check the box. After you check the box, we're going to assume that that's knowing, intelligent, and voluntary, no structural error, and we're good. Well, the district court really did that in this case. The district court said that there was, he knew that obviously that this was for resentencing, and the district court mentioned that we went through, assiduously went through the charges in the case. District court relied on counsel. He had me review the charges, and then he had defense counsel, who was present, by the way, throughout the entire entirety of this hearing, and experienced defense counsel, and Ms. Pedraza at that, and she went through all of the sentencing maximums and minimum mandatories. Of course, now the one thing they're complaining about with regard to the minimum mandatories, first of all, that was the 10-year minimum mandatory being reduced to five, is that she was correct at the time that it was a 10-year minimum mandatory. It had not yet been, that had not yet been changed. I mean, Elaine had, I said she wasn't really correct. Elaine had been the law for eight years plus. Well, I argued, consistent with the Department of Justice's position at the time, that Elaine was not retroactive, and the judge agreed with me at the time. Mr. Hoffman, of course, took exception to that. Mr. Hoffman prevailed, eventually, on that matter, and that was why we came back for a third resentencing in this case, because Mr. Hoffman is, there is a, there's an extent to which he throws everything at the wall and hopes that something sticks, but at the same time, he is, he has argued very specifically, he is very knowledgeable of the cases, argues these very specifically, both in his writing and in his oral arguments. One of the objections of judges in having unrepresented litigants is that they do throw everything at the wall, and it wastes a lot of time, and if they had counsel, they would not be spending that time throwing everything at the wall, and so there are many reasons why judges want litigants to be represented, and if we're going to let them do that, should we not have a rigorous test to determine who can do it and who can't do it? We do and we should, and, but the one thing to remember about that is that, you know, the Supreme Court in Feretta actually, in that decision, criticized the trial court for forcing an attorney on a defendant who did not want one, and in doing so, they even spoke of Great Britain's star chamber of the 15th and 16th century and called it, they actually said it was repulsive to the right to defend oneself, so as we, this is what the district court and this court and I have to deal with in these issues, is that as much as it's better or easier for all of us, certainly easier for me, when somebody has a lawyer and a good one at that, it is a fundamental right that somebody has to represent themselves, and the greater error in this case would have been if Judge Slomski said, you know what, Mr. Hoffman, I don't care, you didn't go to law school, and I'm going to force you to be represented by counsel, you're going to have to sit there and be quiet. That would have been a problem in this case. Mr. Hoffman had every right to represent himself, and that colloquy that was done by Judge Slomski was a very thorough colloquy, and I think the district court actually made the right decision in this case, and this court should uphold it. As far as having a second renewed colloquy, that is not required constitutionally. This court, although in some not precedential cases, in U.S. v. Royal and U.S. v. Santos, both in 2009, said that a detailed pretrial colloquy does not need to be repeated at sentencing. So that really applies very much to this case, and also as to that, the court even said there's a plain error standard to be applied here. Now, I believe the government prevails whether it's plain error, or whether it's de novo, or whether it's plenary, but in this case, this court, again, a non-precedential opinion in the U.S. v. Claude in 2016, said that a procedural objection that's not raised by a pro se litigant is viewed on a plain error standard. The 11th Circuit said the same thing, pardon me, in U.S. v. Davila. But, you know, what about this, so a couple things. One, if the 2021 colloquy, you know, had detailed description of everything about sentencing, you know, this is the complete road ahead, this is what you have, then it's easier to say, hey, that can apply to all resentencings too, because we checked every possible box with respect to sentencing. But what about this notion of intervening case law, and kind of get the updated version of Nassir, and Rehafe, and the fate of your five to ten years? You know, I mean, it seems that, you know, Mr. Hoffman might not have known that. And so, you know, or at least we don't have a colloquy on the record that he knows that. And so, shouldn't that have at least been done? You say, hey, look, you know, I just want to check out, I know you want to represent yourself, but I've got to tell you, just checking in on a couple points, things have changed. Is there anything, you know, your opponent says that that's a good idea, that might be a good idea, but that would be a new rule too. We haven't ever said updates on case law, latest, greatest, shepherdization is required by district courts upon a Ferretto request. That's correct, and if I was smiling a little bit, it's only because I wish I had been as Hoffman was, in foreseeing and predicting what appellate courts would do with regard to these questions. I mean, we didn't, Judge Chung mentioned the categorical approach, that applied in this case as well, because one of the, he shot two people. One of those was based on conspiracy to commit Hobbs Act robbery. 25 years ago, we all thought that that was just, that was a crime of violence. Now, we're told it's not. So it's, you know, that's what we deal with, and we've, dealt with it, but it's a, but yeah, the judge does not have to have a crystal ball and can't have a crystal ball when it comes to, comes to those cases. I see. We've mostly been talking about the mistakes in the range of punishment at count three, but there was a mistake at counts one and two that was noted as far as the supervised release. Why, why doesn't that matter? You treat it with a footnote in your response brief. It's, I mean, if we're talking, well, first of all, it's, it's the maximum sentence on those was, was correct. And the, and the supervised release, to the extent there might have been a mistake, it might have been one for over a couple of years, it would have been superseded by the maximum sentence anyhow. The maximum supervised release under a 924C, whatever grade of 924C it is, is lifetime supervised release. So if there was an error on one of these, it really would have made any difference whatsoever. And I see. When you're, you're saying the minimum, mandatory minimum supervised release on a 924C is lifetime? No, no, not, no, it's not minimum mandatory. No, I didn't, I didn't. Well, I'm just asking, why doesn't a mandatory minimum sentence, the mandatory nature of that, why doesn't that matter, even if it's in the supervised release context? Well, because there, you have other counts in this case where, where you also have, you have, you have supervised release terms that are, that are the same or, or higher. So it's, it's, I don't. Same or higher mandatory minimums that he was advised of? We have, right. There was, I mean, there was a, this was a heroin conspiracy case and it was, there was, there are minimum mandatories that were. But that's the, that's what we're talking about, counts one and two. Yeah, I'm sorry. Those are the ones that are mistaken. Are they? Well, I mean, one, I'm, I'm not sure that they are, but it's, it's. Well, let's just assume they were. I'm just trying to understand, is there, are you, you only touched on that in the footnote. Are you saying that's the range of punishment? I'm just trying to understand, are you saying the range of punishment for supervised release doesn't matter for a phoretic colloquy? Does it matter? Certainly not in this case. I mean, I mean, I mean, frankly, and I don't mean, it's a great question, but I don't mean to make fun of it, but it's, it's, it's rather ludicrous to think that Mr. Hoffman would have said, oh, if I'm looking at only four-year supervised release on this count instead of five, I would need an attorney. I mean, it doesn't really make sense. This sounds like your harmless error slash whole record approach again, which seems foreclosed by the Booker and Jones decisions. Again, I submit that it's not. And I think this court should follow, should follow Vaughn and, and Booker and Jones, by the way, that's, that's also, this court's already ruled in, although years ago in McFadden, McFadden said you look at the whole record. And so I, in, in Booker and Jones, again, it's not the holding in that. I think McFadden still applies. So this court can look, doesn't need to go on block. You can look to McFadden and say, we can look at the whole record, at least in this case. Certain circumstances. So if there's, if there's a Booker and Jones carve out based on the fact that we can, given McFadden or Vaughn, what, what is that carve out here? What, what would you say is the, how would you specify what that guiding principle would be? I think in a situation with Booker and Jones, where there's just not adequate information that's there, then where the court would, as it did in Booker, basically throw up its hands and say, well, we can't, we can't look at this and tell what the defendant was thinking. In this case, we certainly can. In McFadden, they certainly could. And so, and in Vaughn, it says you must. So look at the whole record. So that, that's the government's position. But Jones and Booker post-date Vaughn. Well, it does, but it's a Supreme Court opinion. So. We're bound by it. All right. All right. Thank you for your time. Thank you very much. I'd like to first address the notion, if I may, that perhaps in the sentencing context, a full record approach would be appropriate. That, that approach is entirely foreclosed by this court's decision in Salamo. In Salamo, the court was presented with a defendant who filed numerous pro se filings in anticipation of sentencing, where he had demonstrated his knowledge of, of much of the sentencing procedure. And nonetheless, this court still said that that was not a fair consideration in determining whether or not he had knowingly and intelligently waived his right to counsel at sentencing. So I agree, this, this court would have to take that issue up en banc in order to revisit very longstanding precedent. And I, I'd really urge this court not to. I think that the rule requiring a full on the record colloquy and reviewing the colloquy alone makes the most sense and is most appropriately protective of the right and allows for the most consistent application of this area of the law. Because we can imagine a lot of inconsistencies if we're going to start evaluating a defendant's pro se filings at various points in time. And I, I think pro se filings in particular warrant caution because we know that a lot of prisoners obtain assistance in preparing pro se filings from, from jailhouse lawyers and other folks who are incarcerated. As far as the suggestion that this court could apply plain error review, it's completely out of step and would require the court to upend again, longstanding precedent, recognizing that the review in this area is de novo. This, this court looks de novo to whether the colloquy is sufficient for a knowing and intelligent waiver. And the government cites some case law suggesting plain error review, but that's simply an opposite. I know the fourth circuit and the Bernard decision applied a plain error review because of how active defense counsel had been in the course of a colloquy. If not foreclosed by this court's precedent, I think a rule would make no sense here because we know the realities of the situations where requests to proceed pro se occur. They occur when there's often a rift between the defendant and counsel. It also seems weird here when defense counsel was the source of the error on the range of punishments. Yes, that's another point as well. But here I think also fundamentally counsel was conflicted. And so a counsel, when they, when they're aware that they have a conflict of interest, they don't continue to act in the same manner as advocate in a courtroom. They're, because they're laboring under a conflict of interest. So sort of putting the onus on defense counsel to object in these scenarios would be very odd. This court with good reason has, has not sort of adopted a rule like that. It's a little strange though, that counsel might be conflicted. And then we lay, leave it to the defendant himself to make a request to represent himself based on a conflict of counsel. It seems a little strange, right? You know, we want to sit counsel is really important. The whole point of Heredity is counsel is really important. And then we don't, then counsel operates with a conflict, seeming conflict. And then we leave it to the defendant himself to raise that conflict. So I don't think that the conflict was the reason why Mr. Hoffman necessarily decided to go pro se at this point in time. I think the district court rightly recognized that Mr. Hoffman could have instead had replacement counsel appointed at that point in time, but he opted instead to, to go pro se. This is not a case that sort of involves the sort of the two-step framework of determining whether or not the defendant has good cause to have new counsel. But here, you know, where a defendant sort of unequivocally indicates that they want to proceed pro se, it then does trigger this duty of the district court to engage in a full colloquy that's sufficiently penetrating to ensure a knowing and intelligent waiver. Can I just ask you to reset to maybe your first two minutes before the red light comes? You were sketching out what you thought a phoretic colloquy for sentencing should look like. I don't think we have a case on this other than max-min penalties sort of stuff like this by count. That's what I'm seeing in our case law, at least our reported case law. You were saying that there's more that needs to go in, and I think you were pitching that this was the case to do it sort of moment. And then somehow we deviated from that. You want to just give us a bullet point for what you think that, what that would look like just, just so we can consider that? Yes, Your Honor. To put meat on the bones of the Salemo case, which requires a sentencing-specific colloquy, I think a colloquy should cover four topics. The Sentencing Reform Act and the fact that it imposes no limitation on what a court can consider in sentencing. Critical here because it's different from the trial context, correct? Sentencing guidelines, just generally their application and the fact that they provide a starting point for the court's analysis and that they are advisory in nature. Third, the pre-sentence report and the fact that the defendant will have to subject himself to an interview for that. And then fourth, the defendant's right of allocution. I think that these four topics would allow the court to appropriately explore the dangers and disadvantages of going it alone in this context, because they will allow... What was the fourth one? I'm sorry. Allocution. The right of allocation. Okay, I'm sorry. Go ahead. It's highlighted here because the court noted Mr. Hoffman's failure to express remorse. This is a way that had he been appropriately counseled in the course of his allocution, could have made a difference in his request for leniency. So these are, I think, the critical components of a federal sentencing that should be covered in some fashion by an attorney. I don't think any of this should go so far as to say this is what your guidelines range would be for count one or for count two or count three. At least at this stage of the proceeding. This court does not need to go so far in this case. I think there is some case law from this court, in particular Jones, indicating that some specificity about guideline application is required. For example, warning about certain enhancements. But we're not taking that position in this case. This court can reverse without going so far in this case. But certainly, I think where very specific advisements are given, should the circumstances change, the court needs to correct the advisements, right? And that can sometimes trigger a duty to re-inquire. But I don't think a specific guideline application is required for every sentencing colloquy. And so, like, let's just say that these four ideas, you know, belong in the bench book. You know what I mean? Why should they be, shouldn't they just be given at the very, at any forerunner colloquy, even when not limited to sentencing? I mean, it seems like if you want to represent yourself, the presumption is you're going to go it alone for a long time. Maybe you have standby counsel. Maybe you can opt back in to getting counsel. But it feels like these aren't just unique when you want to represent yourself at sentencing. These should probably be given at any stage would be, I'm assuming, your position? Um, I don't, you know, not necessarily. I mean, it certainly could be, and it could be a best practice. But for a waiver of the right to counsel at trial, this court has never required that any of those topics that are sentencing related be explored, so long as the defendant is appropriately advised of the range of allowable punishments as required under Von Moltke. So, I mean, certainly if the court's intent was to not revisit the colloquy again at sentencing. It would have to do that. It would have to do that. It would have to do it on the front end. But I think in some ways, the better course is to, is to re-advise in the context of a sentencing, just because at that point in time, it's a very different course that the case is taking. And it's a new, it's a new type of proceeding. But I think, you know, this would be a different case. At one level, you don't have to take up, your point is, at some point in time, before you represent yourself at sentencing, you think these four things need to be part of the colloquy. Yes. We ask you reverse and remand. Thank you. Thank you very much. We will take the matter under advisement.